# jsimpson001@icloud.com

| | |
|---|---|
| **From:** | Jeffrey Simpson <jsimpson001@icloud.com> |
| **Sent:** | Wednesday, July 23, 2025 5:26 PM |
| **To:** | Jacqulyn Loftin |
| **Cc:** | Benjamin Robert Rajotte |
| **Subject:** | Fwd: Jeffrey Simpson to YJ Simco Membership Interest Transfers - Melrose and Benner Distributions |
| **Attachments:** | image001.jpg; Untitled attachment 00713.htm; 5952 Benner Investor LLC Operating Agreement.pdf; Untitled attachment 00716.htm; 5952 Benner Investor LLC First Amendment to Operating Agreement.pdf; Untitled attachment 00719.htm; 3200 Haverhill GP Agreement.pdf; Untitled attachment 00722.htm; JJ Haverhill.pdf; Untitled attachment 00725.htm |

Or reply to this

Jeffrey Simpson

Sent from my iPhone

Begin forwarded message:

> **From:** Jeffrey Simpson <jsimpson001@icloud.com>
> **Date:** July 14, 2025 at 5:47:17 PM EDT
> **To:** Jacqulyn Loftin <jsl@lhmlawfirm.com>
> **Cc:** Benjamin Robert Rajotte <rajb@mllg.nyc>
> **Subject: Fwd: Jeffrey Simpson to YJ Simco Membership Interest Transfers - Melrose and Benner Distributions**
>
> Nice to see you earlier
> If you were referring to this, yes this is actually my former partner that has caused the major destruction of my company so I would open what it is he sent. If there was someone else, please send me that name so I could check.
>
> Thank you
>
> Jeffrey Simpson
>
> Sent from my iPhone
>
> Begin forwarded message:
>
>> **From:** Kevin Wiener <kwiener@35oak.com>
>> **Date:** July 9, 2025 at 12:30:10 PM EDT
>> **To:** Jeffrey Simpson <jsimpson001@icloud.com>, gremesser@aol.com
>> **Cc:** jsl@lhmlawfirm.com, "Koevary, Jonathan T." <jkoevary@olshanlaw.com>, Benjamin Robert Rajotte <rajb@mllg.nyc>, Allen Schwartz <allen@allenschwartzlaw.com>, J Chassen <jaredchassen@gmail.com>, Michael Wiener <MWiener@35oak.com>

**Subject: Jeffrey Simpson to YJ Simco Membership Interest Transfers - Melrose and Benner Distributions**

Dear Messrs. Simpson and Messer:

I am writing on behalf of the Arch Companies to obtain clarity, and ideally a joint position, about the impact of certain purported membership interest transfers from Mr. Simpson to YJ Simco LLC that have an immediate impact on certain distributions that must be made with property sale proceeds.

In November 2024, Arch sold a multifamily apartment complex called Melrose Apartments in West Palm Beach, Florida. Most of the proceeds of that sale are now ready for distribution.

The general partner entity in control of Melrose is 3200 N Haverhill GP LLC, a New York limited liability company. Arch Real Estate Holdings LLC ("AREH") is the managing member of that entity.

The other two members of that entity of relevance for the distribution are 608941 NJ Inc. ("Oak"), the acting managing member of AREH, and JJ Haverhill LLC ("JJ Haverhill"), a New York limited liability company with eleven members, primarily former Arch principals, employees and friends and family. $368,000 in cash was invested through JJ Haverhill and it was also assigned $144,000 in acquisition fees. Mr. Simpson's membership interest in JJ Haverhill, inclusive of acquisition fees, was $83,000. Under the JJ Haverhill operating agreement, Mr. Simpson was appointed by the members as managing member of the company.

I understand that Mr. Simpson now alleges that prior to the YJ Simco LLC ("YJ Simco") bankruptcy, he assigned 100% of his membership interests in JJ Haverhill to YJ Simco. Pursuant to subsection 603(4) of the New York Limited Liability Company Law ("NYLLC Law"), an assignment of 100% of a member's interests in a limited liability company causes that member to cease to be a member of the company and to cease to have the power to exercise any rights or powers as member. There does not appear to be any provision in the JJ Haverhill operating agreement that preserves the assigning member's membership rights on an assignment that would override the default provisions of the NYLLC Law.

Subsections 603(2) and (3) of the NYLLC Law provide that the assignee of the membership interests does not obtain any membership powers or rights on receiving a membership interest assignment, but is entitled only to the assignor's distribution rights and allocations of profits and losses.

Under section 604 of the NYLLC Law, an assignee can become a member of a limited liability company on the vote or written consent of a majority in interest of the members other than the assignor. It is not clear the extent to which section 12 of the JJ Haverhill operating agreement overrides this section. I also have no information about whether YJ Simco ever signed a joinder to be formally admitted as a member of JJ Haverhill, or whether it remains solely an economic assignee.

The result of this is that it is unclear who, at the moment, is legally entitled to manage JJ Haverhill and therefore to receive the Melrose distribution and remit it to

2

upstream investors (including, presumably to the YJ Simco bankruptcy estate). It is unclear whether the purported membership transfer from Mr. Simpson to YJ Simco also had the effect of transferring Mr. Simpson's role as managing member, and whether, if YJ Simco was never formally admitted as a member, that means that Mr. Simpson's management rights terminated on the transfer along with his membership rights (such that the other members of the company must appoint a new managing member) or whether he remains manager of the company without being a member. Given Mr. Simpson's history of misappropriating assets from companies he manages, I am very wary of the prospect of the JJ Haverhill members' investments being diverted by Mr. Simpson if he is not even entitled to manage the company, and the potential liability that creates for AREH. The amount of distribution JJ Haverhill is entitled to is about $58,000, which is not an insubstantial sum to be potentially diverted.

It would be my preference if all relevant parties can get on the same page about how to handle this distribution. I do not believe JJ Haverhill ever had a bank account, and previously when distributions were made in such a situation, Mr. Simpson (who was then in control of AREH) simply had the JJ entity bypassed and the distributions made directly to the upstream investors.

I think it would probably be the cleanest if we do the same thing now. As a paper entity, JJ Haverhill should have no expenses other than the preparation of its annual tax return (which, I believe, is still outstanding going back to 2023 or possibly 2022). On everyone's mutual direction, we could have the Arch accountants prepare the JJ Haverhill tax returns (2024 is expected to be a final tax return for the downstream entities), be paid out of the JJ Haverhill distribution, and then the remainder be sent directly to JJ Haverhill's members, with Mr. Simpson's share (around $9,400) going to the YJ Simco bankruptcy estate consistent with his continuously-expressed intentions that all of his Arch-related distributions should be going to YJ Simco.

Separately, Arch recently sold an apartment building at 5952 Benner St in Los Angeles, California. This is an investment that predated the formation of Arch, with all the relevant principals having membership interests directly in 5952 Benner Investors LLC ("Benner Investors"), a Delaware limited liability company. AREH is the non-member manager of Benner Investors. Mr. Simpson had a membership interest in 12.5% of the equity of Benner Investors, which he purports to have assigned to YJ Simco prior to its bankruptcy.

I note that while the Delaware Limited Liability Company Act ("Delaware LLC Act") has similar provisions to New York for an assigning member to lose their membership interests, that provision is overridden by section 7.5 of the Benner Investors operating agreement, which preserves an assignor's membership rights until the assignee is admitted as a substitute member by executing an agreement accepting and adopting the terms of the operating agreement.

I also note that Mr. Simpson's purported assignment of his membership interest in Benner Investors appears to violate the restrictions on the transfers of membership interests contained in Article VII of the operating agreement, as the other members of Benner Investors did not consent to this transfer and it is not a listed permitted transfer under section 7.2. The operating agreement provides that any transfer in violation of Article VII "shall be invalid, ineffective and not enforceable for any purpose, shall be *void ab initio* as to the Transfer of a Membership Interest that

3

would cause such violation, and the intended transferee shall acquire no rights in such Membership Interest."

I would note that to the extent such a transfer has occurred, it does not appear that YJ Simco ever went through the process to be admitted as a member of Benner Investors, rather than an assignee, and that under the Delaware LLC Act, the member of an LLC loses its membership rights (but not its economic rights) on the filing of a voluntary bankruptcy petition, though I understand some courts have determines that provision to be superseded and voided by the US Bankruptcy Code.

All of which is to say, that as with Melrose, it is not clear where Mr. Simpson's distribution should be directed. Given the operating agreement, it would appear that Mr. Simpson's purported transfer of his membership interests was *void ab initio*, however I do not wish to run the risk of AREH violating the bankruptcy stay by diverting property that should be going to YJ Simco to Mr. Simpson if the transfer was, in fact, legally valid. Moreover, Mr. Simpson continues to insist that YJ Simco is now the member of every Arch entity rather than himself, so he can obviously direct that the distribution go to YJ Simco now even if he never legally assigned his economic rights.

As with Melrose, my preference would be that the two of you confer so that a joint position can be provided to Arch and there is no accusation that Arch misdirected the funds. We will be awaiting resolution of these issues so that the appropriate distributions can be made.

I am happy to discuss the matter with either or both of you at your convenience. I have attached the relevant operating agreements for your reference.

Yours sincerely,

**Kevin Wiener** | Executive Vice President & General Counsel
Phone: 416-618-3615 | Fax: 416-245-0538
35 Oak Holdings Ltd. | 35 Oak Street | Toronto ON M9N 1A1
kwiener@35oak.com