FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
INDEX NO. 158055/2023
NYSCEF DOC. NO. 206
RECEIVED NYSCEF: 10/13/2023
25-10437-lgb    Doc 45-21    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 1 of 9

# AGREEMENT

**THIS AGREEMENT** (this "Agreement"), dated as of August 01, 2023, is made by and between JEFFREY SIMPSON, an individual ("Simpson"), YJ SIMCO LLC, a New York limited liability company ("YJ Simco"), and JARED CHASSEN, an individual ("Chassen", together with Simpson, the "Parties", and each, a "Party").

## Recitals

A. The Parties collectively own, either directly or indirectly, either individually or with its affiliates, membership interests in each of 1640 Montauk LLC, a New York limited liability company ("1640 Montauk"), 1640 Motors LLC, a New York limited liability company ("1640 Opco"), 225 HPR LLC, a New York limited liability company ("225 HPR") and 550 Metropolitan Ave LLC, a New York limited liability company ("550 Metro", collectively with 1640 Montauk, 1640 Opco and 225 HPR, the "Companies").

B. The Parties desire to set forth their agreement that following the transactions contemplated hereunder, and regardless of the terms of any organizational documents for the Companies, Simpson shall directly or indirectly own 100% of the membership interests owned by the Parties of 1640 Montauk and 1640 Opco (the "Simpson Companies") and each of Simpson and Chassen, shall, directly or indirectly, either individually or through an affiliate, own 50% of the Parties membership interests in each of the Companies other than the Simpson Companies (the "Shared Ownership Companies").

**NOW, THEREFORE**, in consideration of these premises, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, it is agreed that the statements set forth in the recitals above are true and correct and are incorporated herein and made a part hereof, and that the Parties agree as follows:

1. **Restructuring and Acknowledgment of Ownership.** On the date hereof (the "Closing Date"), the Parties (and their respective relatives and affiliates, including but not limited to Deborah Chassen and Arielle Chassen (the "Chassen Affiliates")) shall transfer to YJ Simco, all of the membership interests in the Simpson Companies that are beneficially owned by Chassen or the Chassen Affiliates as of the date hereof other than 1640 Montauk. The Parties shall cause JJ Arch LL, a New York limited liability company to transfer 100% of its membership interest in 1640 Montauk to YJ Simco. The Parties also acknowledge that notwithstanding anything to the contrary in the organizational documents or books and records of the Shared Companies, effective as of the Closing Date, each of the Shared Ownership Companies shall be owned 50% by Simpson through YJ Simco and 50% by Chassen and or the Chassen Affiliates. The Parties furthermore acknowledge that effective as of the Closing Date, 225 HPR will be managed collectively by both Simpson and Chassen, regardless of the organizational documents of 225 HPR.

2. **Consideration for Restructurings and Acknowledgement.** In consideration for the transactions and acknowledgements contemplated by Section 1, Simpson shall pay (or cause to be paid) to Chassen, the sum of approximately $675,938.35, as set forth on Exhibit B, attached hereto (the "Purchase Price") which shall be paid as set forth below. The final Purchase Price

shall be determined by the Parties six (6) months following the date hereof (the "True-Up Date"). At the True-Up Date, the parties agree to amend Exhibit B with the most recent calculation of the Purchase Price. The Purchase Price shall be paid as follows:

(a) An initial payment of $500,000 shall be made to Chassen simultaneously with the closing by Simpson of that certain loan from Connect One Bank in the principal amount of $995,000 (the "Loan").

(b) The balance of the Purchase Price shall be paid to Chassen from the distributions paid to Simpson by 1640 Montauk, 225 HPR and 1640 Opco, which payments shall be made to Chassen at Simpson's discretion, provided that the balance of the Purchase Price shall be paid to Chassen at the sooner of (i) a capital event for the above listed Companies or (ii) the date that is twenty four (24) months following the Closing Date.

3. **Chassen's Obligations regarding the Loan**. In connection with the Borrower obtaining the Loan, Chassen agrees to guarantee 50% of the Borrower's obligation under the Loan and to execute any other documents as shall be reasonably requested by the Lender. Simpson agrees to use his best efforts to seek to have Chassen released as a guarantor from any such guarantee following any refinancing of the Loan. Simpson shall be responsible for making timely payments under the Loan.

4. **Transfer of Automobiles**. As of the date hereof, the Parties collectively, directly and indirectly, own certain automobiles and other vehicles. As of the Closing, Chassen agrees to transfer titles in all vehicles under his (or a Chassen Affiliate's) name to Simpson. Simpson hereby also agrees that, as of the Closing, he will transfer title for the vehicles listed on Exhibit A to Chassen or Chassen's designee.

5. **Pre-Closing Amounts**. The Parties agree that they shall each be responsible for or credited for (and shall indemnify such other Party as necessary) fifty (50%) percent of the net gains or losses occurring from the events described on Exhibit C, attached hereto that occurred prior to the Closing Date. At the True-Up Date, the Parties shall determine any such amounts and pay to such other Party, as applicable, so the total net gain or loss is equal between both Parties.

6. **Indemnification**. Simpson agrees to indemnify Chassen and hold him harmless against any and all manner of suits, claims, liabilities, demands, damages, expenses, attorneys' fees, and collection costs resulting from or arising out of the Loan or any other indebtedness of a Company for which Chassen has provided a guaranty ("Indemnified Loss") and shall pay to Chassen on demand the amount of such Indemnified Loss. This provision shall survive termination of this Agreement.

7. **Parties' Representations and Warranties**. Each Party hereby represents and warrants to the other Party as follows:

(a) Such Party has all requisite power and authority to execute and deliver this Agreement and to perform its obligations hereunder.

2

4887-8508-3760, v. 5

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 206

INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

25-10437-lgb    Doc 45-21    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 3 of 9

(b) This Agreement constitutes the valid and binding obligation of such Party, enforceable against such Party in accordance with its terms, subject as to enforcement to bankruptcy, insolvency and other similar laws affecting the rights of creditors and to general principles of equity.

(c) All beneficial ownership interests in the Companies owned by such Party (or its affiliate) are free and clear of any restrictions on transfer or restrictions under any U.S. federal and state and foreign securities laws, taxes, security interests, options, warrants, purchase rights, contracts, commitments, equities, claims, and demands. Such Party has not pledged, assigned, hypothecated or transferred any portion of its direct or indirect interest in any of the Companies.

(d) The execution, delivery and performance by such Party of this Agreement and any and all other documents executed by such Party in connection herewith do not, and the consummation of the transactions contemplated hereby and thereby will not, (i) conflict with any of the provisions of the organizational documents of any of the Companies or such Party; (ii) conflict with, result in a breach of or default (with or without notice or lapse of time, or both) under or give rise to a right of termination under, any contract, material permit, license or instrument to which any of the Companies or such Party is a party; or (iii) contravene any foreign, federal, state or local law, ordinance, writ, statute, treaty, rule or regulation, or any order, award, decision, ruling, decree, or other restriction applicable to such Party in any material respect.

(e) No consent, approval or authorization of, or declaration or filing with, or notice to, any governmental entity is required to be made by such Party in connection with the execution and delivery of this Agreement and any and all other documents executed by such Party in connection herewith or the consummation by such Party of any of the transactions contemplated hereby or thereby.

(f) There is no claim or action pending or, to such Party's knowledge, threatened, against such Party relating to, or seeking to prohibit or otherwise challenge the consummation of this Agreement or the transaction contemplated hereby or to obtain substantial damages with respect thereto.

(g) Such Party is not a person with whom a citizen of the United States is prohibited to engage in transactions by any trade embargo, economic sanction or other prohibition of United States law or regulation or executive order of the President of the United States or is named on the Office of Foreign Assets Control (OFAC) list or any similar list administered by a governmental authority to enforce economic and trade sanctions based on United States foreign policy and national security goals.

(h) Each Party has a direct or indirect benefit from the terms of this Agreement and therefore in consideration thereof agrees to the personal obligations set forth herein on such Party.

8.  **General Provisions**.

   (a) Governing Law. This Agreement shall be governed by and construed in accordance with the domestic laws of the State of New York without giving effect to any choice or conflict of law provision or rule (whether of the State of New York or any other jurisdiction) that would cause the application of the laws of any jurisdiction other than the State of New York.

   (b) Entire Agreement. This is the entire agreement between the Parties with respect to the subject matter hereof. There are no promises, conditions, covenants or terms, which are not contained herein. This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors, heirs and permitted assigns.

   (c) Further Actions. Each of the parties hereto shall hereafter execute and deliver such further instruments and do such further acts and things as may be required or useful to carry out the intent and purpose of this Agreement and as are not inconsistent with the terms hereof.

   (d) Counterparts. This Agreement may be executed simultaneously in two or more counterparts (including by facsimile or portable document format (pdf)), each of which shall be deemed an original, but all of which together shall constitute one and the same agreement.

*[Signature page follows]*

4887-8508-3760, v. 5

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 206

25-10437-lgb    Doc 45-21    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 5 of 9

INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

**IN WITNESS WHEREOF**, each of the parties hereby executes this Agreement as of the date first set forth above.

_____
Jeffrey Simpson

YJ SIMCO LLC

By _____
Jeffrey Simpson
Member

_____
Jared Chassen

AGREED AND ACCEPTED BY:
(SOLELY WITH RESPECT TO SECTION 1)

_____
Deborah Chassen

_____
Arielle Chassen

[Signature Page to Agreement]

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 206
25-10437-lgb    Doc 45-21    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 6 of 9
INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

Exhibit A

Automobiles

1983 Black Porsche 911 SC – Completed.
1993 Mercedes Benz 230 GE – Completed. Chassen to pay for seats directly and for paint, of which $3,500 has already been paid.
2003 Land Rover Discovery

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 206
25-10437-lgb    Doc 45-21    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 7 of 9
INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

Exhibit B

Purchase Price Calculation

**Exhibit B**

| | | | |
|---|---|---|---|
| Buyout Of Jared from Rever | | $ | 1,186,329.48 |
| Plus: | Loan to Jeff | $ | 50,000.00 |
| Less: | Owed to Jeff | $ | (497,500.00) |
| Balance 88 | | $ | (53,229.64) |
| Balance 225 | | $ | 22,813.50 |
| Balance 550 | | $ | (32,475.00) |
| | | **$** | **675,938.35** |

| | Money flows as follows | Jeff | Jared | Outstanding Buyout Due JC |
|---|---|---|---|---|
| 1) | Closing of CNOB line, money is split 50/50 | $ 500,000 | $ 500,000 | $ 175,938.35 |
| 2) | Distribution of Schwenks Money | 127,854.64 | 127,854.64 | $ 175,938.35 |
| 3) | Outstaning due to JC, from next cash inflow/capital event | | | $ 175,938.35 |

FILED: NEW YORK COUNTY CLERK 10/13/2023 05:27 PM
NYSCEF DOC. NO. 206
25-10437-lgb    Doc 45-21    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 9 of 9
INDEX NO. 158055/2023
RECEIVED NYSCEF: 10/13/2023

Exhibit C

Pre-Closing Events – Payments

1. Nicola Zanghi
2. Jon Rodriguez