FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
NYSCEF DOC. NO. 16
25-10437-lgb    Doc 45-23    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 1 of 7
INDEX NO. 158055/2023
RECEIVED NYSCEF: 08/15/2023

# Exhibit 4

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
NYSCEF DOC. NO. 16
INDEX NO. 158055/2023
RECEIVED NYSCEF: 08/15/2023

25-10437-lgb    Doc 45-23    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 2 of 7

# AMENDMENT NO. 1 TO
# LIMITED LIABILITY COMPANY AGREEMENT
# OF
# JJ ARCH LLC

THIS AMENDMENT NO. 1 TO LIMITED LIABILITY COMPANY AGREEMENT of JJ ARCH LLC (this "<u>Amendment</u>") is made and entered into and is effective as of May 22, 2021, by and between JARED CHASSEN ("<u>Chassen</u>"), and JEFFREY SIMPSON ("<u>Simpson</u>").

WITNESSETH:

WHEREAS, Chassen and Simpson are parties to that certain Limited Liability Company Agreement of JJ Arch LLC, dated as of December 11, 2017 (the "<u>Operating Agreement</u>");

WHEREAS, Chassen and Simpson desire to amend the Operating Agreement as hereinafter provided;

NOW, THEREFORE, for good and valuable consideration, the Operating Agreement is hereby amended as follows:

1.  <u>Capitalized Terms</u>. Initially capitalized terms used in this Amendment and not otherwise defined shall have the respective meanings assigned thereto in the Operating Agreement.

2.  <u>Amendments to Operating Agreement</u>.

    a.  Section 1.1 of the Operating is hereby amended by deleting the definition of "Distribution Percentage" therefrom in its entirety and the following is inserted in lieu thereof:

    "<u>Distribution Percentages</u>:  With respect to Simpson, 50.1% and with respect to Chassen 49.9%."

    b.  Section 1.1 of the Operating is hereby amended by deleting the definition of "Redemption Amount" therefrom in its entirety and the following is inserted in lieu thereof:

    "<u>Redemption Amount</u>:  An amount equal to the greater of (b) any life insurance maintained by the Company or the other Member, on the life of the deceased Member or (b) all Distributions that the Effected Member or Resigning Member, as applicable, would have been entitled received under Section 5.1(a) (i) if all Cash Flow of the Company (excluding Promote Distributions) were then distributed and (ii) if all Cash Flow consisting of Promote Distributions from all assets of each Subsidiary as of the date death, Disability or Resignation of the applicable Member were distributed to the Resigning Member or Effected Member, or his estate, as applicable, if such Resigning Member or Effected Member were still a Member of the Company; provided, that in the case of a

Resignation of a Member, the amount payable to the Resigning Member pursuant to clause (ii) of this definition shall be 50% of the amount so determined.

c.   Section 3.1 of the Operating Agreement is hereby deleted in its entirety and the following is inserted in lieu thereof:

"3.1   <u>Management of the Company</u>.  The business, affairs and assets of the Company shall be managed, arranged and caused to be coordinated by Simpson, who shall have, except as otherwise provided in this Agreement (including, but not limited to, in Section 3.2), full, exclusive and complete discretion with respect thereto.  Subject to and in accordance with the provisions of this Agreement, the Members shall have all necessary and appropriate powers to carry out the purposes of the Company set forth in Section 2.4.  Except as otherwise provided in this Agreement, prior to the fourth anniversary of the date hereof, Simpson shall have the unilateral power and authority acting in good faith to make and implement all decisions with respect to all matters which the Company has the authority to perform both directly and indirectly through an Investment Entity, including, without limitation, the power to:

(i)   conduct, manage and control the affairs and business of the Company, and to make such rules and regulations therefor consistent with the Company Law, with the Articles of Organization and this Agreement;

(ii)   open, maintain and close bank accounts and draw checks or other orders for the payment of monies;

(iii)   enter into any contract or endorsement in the name or for the account of the Company;

(iv)   employ, retain, or otherwise secure or enter into contracts, agreements and other undertakings with persons in connection with the management and operation of the Company's business, including, without limitation, any property managers, attorneys and accountants, all on such terms and for such consideration as Simpson deems advisable;

(v)   bring or defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Company;

(vi)   deposit, withdraw, invest, pay, retain and distribute the Company's funds in a manner consistent with the provisions of this Agreement;

(vii)   cause the Company to carry such indemnification insurance as Simpson deems necessary to protect it and any other individual or entity entitled to indemnification by the Company; and

(viii)   take any of the foregoing actions on behalf of the Company in its capacity as a direct or indirect Controlling entity of an Investment Entity.

2

4854-0544-0262, v. 2

FILED: NEW YORK COUNTY CLERK 08/15/2023 11:17 AM
NYSCEF DOC. NO. 16

25-10437-lgb    Doc 45-23    Filed 07/24/25    Entered 07/24/25 15:32:23    Exhibit
Pg 4 of 7

INDEX NO. 158055/2023
RECEIVED NYSCEF: 08/15/2023

d. Section 3.2 of the Operating Agreement is hereby delete in its entirety and the following is inserted in lieu thereof:

"3.2. <u>Limitations on Simpson's Authority</u>. Notwithstanding anything to the contrary contained in this Agreement, if prior to the fourth anniversary of the date hereof, Simpson desires to cause the Company or an Investment Entity to take any of the following decisions or actions (each a "<u>Company Major Decision</u>"), Simpson shall provide written notice thereof to Chassen with such additional information as Chassen may reasonably request. Any Company Major Decision shall be undertaken only with the prior written consent of Chassen (and, for the avoidance of doubt, any action or decision that would constitute a Company Major Decision if made or taken by the Company shall be a Company Major Decision if made or taken by any Investment Entity, which consent shall be deemed granted by Chassen if Chassen fails to object to such action within fifteen (15) days of Simpson's written request therefor:

(i) acquire any direct or indirect interests in any Person other than AREH;

(ii) file, acquiesce to, consent to or take of any Bankruptcy Action;

(iii) sell any asset of the Company or any portion thereof other than any such asset that is no longer required for the operation of the Company or any other Company Asset or any obsolete personal property;

(iv) merge, consolidate or other reorganize the Company with another Person;

(v) borrow or raise monies, or utilize any other forms of leverage and issue, accept, endorse and execute promissory notes, drafts, lending agreements, bills of exchange, warrants, bonds, debentures and other negotiable or non-negotiable instruments and evidences of indebtedness;

(vi) possess, lend, transfer, mortgage, pledge or otherwise deal in, and secure the payment of obligations of the Company by mortgage upon, or hypothecation or pledge of, all or part of an asset of the Company, and to execute such pledge and security agreements in connection with such pledge, or participate in arrangements with creditors, institute and settle or compromise claims, suits and administrative proceedings and other similar matters;

(vii) enter into any lease for space;

(viii) hire any employee, consultant or other personnel;

(ix) engage in any business or activity not authorized by this Agreement;

3

(x) enter into any agreement requiring the expenditure of more than $10,000 per annum;

(xi) enter into any agreement with Simpson and/or any Affiliate thereof, on the one hand, and the Company on the other hand;

(xii) enter into any amendment or modification to this Agreement except as otherwise expressly permitted in this Agreement;

(xiii) maintain reserves in excess of $20,000;

(xiv) admit new or substitute Members to the Company;

(xv) modify any material terms of the AREH Operating Agreement;

(xvi) cause AREH to take any Major Decision (as defined in the AREH Operating Agreement).

e. Exhibit A is hereby deleted in its entirety.

3. <u>Right to Participate in Investments</u>. Notwithstanding anything in the Operating Agreement to the contrary, from and after the death of either Chassen or Simpson (the "Deceased Member") to the date on which the non-Deceased Member dies, the Company shall permit, or cause its Affiliates to permit, the spouse and issue of the Deceased Member to invest in all transactions in which the Company would otherwise have been entitled to invest if the Deceased Member had not passed away on the terms and conditions set forth in this Section 3. The Deceased Member's spouse and issue shall be entitled to invest an amount not greater than the amount being invested by the non-Deceased Member and its Affiliates in such transaction and at such time as the non-Deceased Member and its Affiliates make their investment in such transaction; provided that if the Deceased Member's spouse or issue elect to invest in a transaction, the rights of the Deceased Member's spouse and issue shall be no more or less favorable than those of the participants in such transaction other than the non-Deceased Member.

4. <u>Miscellaneous</u>. (a) Except as modified hereby, the Operating Agreement remains in full force and effect and the provisions thereof are hereby ratified and confirmed.

(b) All references in the Operating Agreement to "this Agreement", "hereunder", "hereto" or similar references, and all references in all other documents to the Agreement shall hereinafter be deemed references to the Operating Agreement as amended hereby.

(c) This Amendment may be executed in one or more counterparts, all of which together shall for all purposes constitute one amendment, binding on all parties hereto, notwithstanding that the parties have not signed the same counterparts.

[signature page follows]

4854-0544-0262, v. 2

IN WITNESS WHEREOF, the undersigned has executed this Amendment as of the day and year first above written.



_____
Jeffrey Simpson

IN WITNESS WHEREOF, the undersigned has executed this Amendment as of the day and year first above written.

_____
Jeffrey Simpson

_____
Jared Chassen