# LIMITED LIABILITY COMPANY AGREEMENT
## OF
## JJ HAVERHILL LLC

This LIMITED LIABILITY COMPANY OPERATING AGREEMENT (this "Agreement"), dated as of July 19, 2022, by and among each of the Persons signatory hereto (collectively the "Members").

In consideration of the covenants and conditions set forth in this Agreement, the parties agree as follows:

1. Acts of Formation. Prior to the date of this Agreement, a Articles of Organization of the Company (the "Certificate") was filed with the Secretary of State of the State of New York. The Members hereby ratify the filing of the Certificate and form the Company in accordance with New York Limited Liability Company Law (the "Act").

2. Name of the Company. The name of the Company shall be "JJ Haverhill LLC" (the "Company") or such other name as the Managing Member (as defined in Section 9) may from time to time determine. The Managing Member shall have the right to cause the Company to operate under one or more assumed names where required to comply with the laws of any states in which the Company is doing business. The Managing Member shall cause to be filed on behalf of the Company such assumed or fictitious name certificate or certificates or other similar documents as may from time to time be required by law for the formation and continuation of the Company as a limited liability company under the laws of New York applicable to limited liability companies and the laws of such other states in which the Company is doing business regarding the qualification of foreign limited liability companies.

3. Place of Business. The office and principal place of business of the Company shall be maintained at 88 University Pl, 11th Floor, New York, New York 10003 or such other place as the Managing Member shall determine.

4. Purpose. The purpose of the Company shall be to (i) acquire a membership interest in 3200 N Haverhill GP LLC, a New York limited liability company ("Arch Entity"), (ii) engage in any and all businesses and activities that a limited liability company may be authorized to engage in under the Act and (iii) to do any and all things necessary or incidental to any of the foregoing to carry out and further the business of the Company as contemplated by this Agreement.

5. Powers. The Company shall have the power to do any and all acts necessary, appropriate, proper, advisable, incidental or convenient to or for the furtherance of the purposes and business described herein and for the protection and benefit of the Company, and shall have, without limitation, any or all of the powers that may be exercised on behalf of the Company by the Managing Member, pursuant to the terms hereof.

6. Term. The Company shall continue until terminated in accordance with the Act.

1017761.1

7. <u>Capital Contributions</u>. (a) On the date of execution of this Agreement, each of the Members shall make a capital contribution to the Company in the form of (i) cash or (ii) a deemed contribution in respect of fees payable to the Arch Entity and allocable to the Company, in either case, in the amount set forth on each Member's respective signature page to this Agreement (such Member's "Capital Contribution").

(b)   At such time as the Company requires additional capital to meet its operating costs, each of the Members shall be obligated to make an additional capital contribution equal to its proportionate share, based on the respective Capital Contributions of the Members, of such additional capital contribution. Additional capital contributions shall be made by each Member within 10 business days of delivery of a notice from the Company setting forth the amount of the additional capital contribution required to be made by such Member. If a Member shall fail to timely make its additional capital contribution pursuant to this paragraph (b), the other Members shall have the right, but not the obligation, to satisfy such Member's additional capital contribution by making a loan (the "Default Loan") to the Company equal to the amount of the defaulting Member's additional capital contribution. All Default Loans shall bear interest at a rate of 15% per annum and shall be payable solely from distributions otherwise payable to the defaulting Member.

(c)   Except as provided in this Paragraph 7, no additional capital contributions shall be permitted or required of any Partner.

(d)   "Percentage Interest" means with respect to each of the other Members, the percentage the percentage determined by dividing such Member's aggregate Capital Contributions by the aggregate Capital Contributions of the Company.

8.   <u>Distributions, Profits and Losses</u>.

(a) All profits and losses of the Company generated from each source of income or investment of the Company shall be allocated among the Members in the same proportion as distributions are payable to the Members pursuant to Section 8(b) hereof.

(b)   The Company shall make distributions to its Members on a monthly basis or at such other times as the Managing Member shall determine; provided, however, in no event shall the Company be required to make a distribution if it would reduce the Company's reserves below $1,000, except for a final liquidating distribution. All distributions shall be made in cash and among the Members as follows:

(i)   all amounts distributed to the Company by the Arch Entity pursuant to Section 6.3(ii) of the Limited Liability Company Operating Agreement of the Arch Entity, shall be paid to Jeffrey Simpson and Jared Chassen in proportion to their respective Capital Contributions;

(ii)   all amounts distributed to the Company by the Arch Entity pursuant to Section 6.3(iii) of the Limited Liability Company Operating Agreement of the Arch Entity, shall be paid to the Members other than Jeffrey

2

1017761.1

Simpson and Jared Chassen in proportion to their respective Capital Contributions; and

(iii) all other amounts distributed to the Company by the Arch Entity shall be paid to the Members in proportion to their respective Capital Contributions.

9. Management. (a) The overall management and control of the business and affairs of the Company shall be vested in the "Managing Member". By their execution of this Agreement, the Members hereby appoint Jeffrey Simpson as the Managing Member. Except as otherwise expressly provided in this Agreement, all decisions with respect to any matter set forth in this Agreement or otherwise affecting or arising out of the conduct of the business of the Company shall be made by the Managing Member. With respect to all of his rights, powers and responsibilities under this Agreement, the Managing Member is authorized to execute and deliver, in the name and on behalf of the Company, such agreements, documents and certificates, as he deems proper, all on such terms and conditions as he deems necessary or appropriate for the purposes of the Company.

(b) Without limiting the foregoing general authority of the Managing Member, the Managing Member shall be authorized to:

(i) sell, pledge, lease or otherwise transfer all or substantially all of the assets of the Company; and

(ii) approve the incurrence of indebtedness by the Company outside of the ordinary course of business.

(c) The Managing Member shall not, without the prior written consent of all Members:

(i) permit the merger or consolidation of the Company with any other entity;

(ii) admit any Person as a Member except as provided in Section 12; and

(iii) except as otherwise permitted in this Agreement, enter into any transactions, agreements or other arrangements on behalf of the Company with the Managing Member or his Affiliates.

10. Indemnification. The Members shall not be liable, responsible or accountable in damages or otherwise to the Company or to any other party hereto, and to the fullest extent permitted by law, the Company shall indemnify and hold harmless the Members, their affiliates and all of their respective heirs, officers, directors, employees, stockholders and agents and/or affiliates (individually, an "Indemnitee") from and against any and all losses, claims, damages, liabilities, expenses (including legal fees and expenses), judgments, fines, settlements and other amounts arising from any and all claims, demands, actions, suits or proceedings, civil, criminal, administrative or investigative, in which the Indemnitee may be involved, or threatened to be involved, as a party or otherwise, by reason of his, her or its management of the affairs of the

3

Company, or status as a member of the Company, an affiliate thereof or a director, officer, employee, stockholder or agent thereof or any affiliate thereof in another entity in a similar capacity, which relates to or arises out of the Company, its property, business or affairs or relates to or arises out of a Member or its respective properties, businesses or affairs, regardless of whether the Indemnitee continues to be a party hereto, an affiliate thereof or an officer, director, employee, stockholder or agent thereof at the time any such liability or expenses paid or incurred, and regardless of whether the liability or expense accrued at or relates to, in whole or in part, any time before, on or after the date hereof; provided, however, that this indemnification shall not apply to any liability or expense that results from fraud or willful or wanton misconduct or gross negligence of such Indemnitee. The negative disposition of any action, suit or proceeding by a judgment, order, settlement, conviction or upon a plea of nolo contendere or its equivalent, shall not, of itself, create a presumption that the Indemnitee acted in a manner contrary to the standard set forth in this Section 10.

11. <u>Fiscal Year, Books of Account; Reports and Records</u>. The fiscal year of the Company shall be the calendar year. Proper and complete books of account of the Company shall be kept by the Managing Member at the Company's principal place of business and shall be available for inspection or audit by the Members or their duly authorized representatives.

12. <u>Transfer of Interest</u>. No Member shall transfer, sell, encumber, mortgage, assign or otherwise dispose of any portion of its interest in the Company without the prior consent of the other Member except to an Affiliate. As used herein, the term "Affiliate" shall mean with respect to a specified Member, (i) an entity who, directly or indirectly through one or more intermediaries, controls, is controlled by or is under common control with, the specified Member, (ii) any person or entity who is an officer, director, partner or trustee of, or serves in a similar capacity with respect to, the specified Member or of which the specified Member is an officer, partner or trustee, or with respect to which the specified Member serves in a similar capacity, (iii) any person or entity who, directly or indirectly, is the beneficial owner of 10% or more of any class of equity securities of, or otherwise has a substantial beneficial interest in, the specified Member or of which the specified Member has a substantial beneficial interest, (iv) upon the death of a Member, the spouse, issue, parent, sibling or sibling's issue of such Member and (v) a trust in which such Member's spouse, issue, parent, sibling, spouse's sibling or a sibling's or spouse's sibling's issue are the sole beneficiaries. An Affiliate does not include a person or entity who is a partner in a partnership or joint venture with the Company or any Member if such person or entity is not otherwise an Affiliate of the Company or any partner. Notwithstanding the foregoing, in no event shall a transfer, sale, encumbrance, mortgage, assignment or other disposition of any portion of its interest in the Company be permitted if it would cause a default under any agreement to which the Company or any entity in which the Company holds a direct or indirect interest is a party.

13. <u>Dissolution of the Company</u>. The Company shall be dissolved and its affairs wound up upon the occurrence of any of the events set forth in the Act.

14. <u>Miscellaneous</u>. (a) No alteration, modification or amendment of this Agreement shall be made unless in writing and signed by the parties hereto.

4

1017761.1

    (b) This Agreement shall be governed and construed in accordance with the laws of the State of New York.

    (c) Except as otherwise provided, this Agreement shall be binding upon and inure to the benefit of the Members and their personal representatives, successors and assigns.

    (d) In the event that any provision of this Agreement shall be held to be invalid, the same shall not affect in any respect whatsoever the validity of the remainder of this Agreement.

    (e) This Agreement constitutes the entire understanding and agreement among the parties hereto with respect to the subject matter hereof, and there are no agreements, understandings, restrictions, representations or warranties among the parties other than those set forth herein or herein provided for.

<center>[Signature Page Follows]</center>

1017761.1

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ Haverhill LLC

_____
Jeffrey Simpson

Capital Contribution: $83,000.00

Address:

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Jared Chassen

Capital Contribution: $0

Address:

7

1017761.1

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Michelle Miller

Capital Contribution: $70,000.00

Address:

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Tristan Last

Capital Contribution: $20,000.00

Address:

9

1017761.1

<div style="text-align:center">

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

</div>

_____
Yechiel Lehrfield

Capital Contribution: $37,000.00

Address:

1017761.1

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Susan Hirsch

AND

_____
Andrew Hirsch

Capital Contribution: $50,000.00

Address:

1017761.1

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Arielle Jacobs

AND

_____
Daniel Jacobs

Capital Contribution: $70,000.00

Address:

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_/s/ Deborah Chassen_____
Deborah Chassen

Capital Contribution: $70,000.00

Address:

1017761.1

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

______________________________
Jason Paul

Capital Contribution: $12,000.00

Address:

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Stuart Chassen

Capital Contribution: $50,000.00

Address:

16

1017761.1

SIGNATURE PAGE TO
LIMITED LIABILITY COMPANY AGREEMENT
OF
JJ HAVERHILL LLC

_____
Michael Queller

Capital Contribution: $50,000.00

Address:

Michael Queller
3179 Saint Annes Drive
Boca Raton, FL 33496

15

1017761.1