

May 21, 2025

The Honorable Joel M. Cohen, J.S.C.
Supreme Court of the State of New York
New York County, Commercial Division
60 Centre Street
New York, New York 10007

      Re:    <u>**Simpson et al. v. Chassen et al.**</u>, **Index #158055/2023: Emergency Request for an Evidentiary Hearing on Plaintiffs' Motion for Leave to Sue the Temporary Receiver for Breach of Fiduciary Duties and *Ultra Vires* Dissipation of Assets**

Dear Your Honor:

      Since assuming control over the "JJ Arch Controlled Entities and/or Properties," one week ago, the Temporary Receiver, Huebscher & Co., has dissipated assets, trampled over the rights of creditors, exposed Plaintiffs to third-party liability, provided absolutely no reporting or accounting, and made a mockery of the Court's express mandate, pursuant to its Receivership Order (doc. #1360), that the receivership "maximize the value" of the subject entities, properties, and their assets. Rather than preventing waste, protecting creditors, and avoiding the "danger that the property will be removed from the state, or lost, materially injured or destroyed" (CPLR § 6401(a)), the Temporary Receiver is doing just the opposite by shuttering a profitable business, voiding its contracts, liquidating its assets, and placing my client in harm's way. Furthermore, this extends to assets owned by YJ Simco LLC, which has filed for bankruptcy.[1] The Temporary Receiver's actions threaten direct, immediate, and permanent harm to its creditors.

      With respect to Rêver Motors ("Rêver"), it has become nearly impossible to keep up with Receiver Huebscher & Co.'s duplicative requests for information, all of which has been provided to the best of our abilities, and notwithstanding that Plaintiffs are prohibited from contacting former staff and lack further access to any of the business' books and records beyond all that which has already been provided. Notwithstanding the collegiality of counsel for all sides, undersigned counsel has expended dozens of hours in attending to the Temporary Receiver's frequently repetitive and unduly burdensome demands. In one example, well over an hour of attorney time was spent explaining, by email, where to find and how to use a set of keys left at the building for safekeeping, including twice sending a video of Simpson dropping them off.

      We respectfully request: (1) that the Court hold an emergency evidentiary hearing, in which Receiver Huebscher is called to testify and attest to compliance with the Court's Receivership Order over the past week; and (2) upon the Court's finding of cause from evidence

---

[1]    <u>In re: YJ Simco, LLC</u>, Case #1:24-bk-10437 (LGB).

adduced at the hearing, that the Temporary Receiver be removed (CPLR § 6405), and Plaintiffs be granted leave to file suit for restitution and damages on account of the Temporary Receiver's breach of fiduciary duties, ultra vires conduct, and gross mismanagement and/or malfeasance. This request is made ex parte, although counsel for Receiver Huebscher & Co., and for Mr. Chassen, respectively, were notified Monday. The harm nevertheless is proceeding rapidly.

      Rêver's abrupt closure has infected all material aspects of its goodwill in the community as a bespoke and market-niche automobile restoration shop, rendering it impossible for the business to complete the contracted-for restoration of over fifty vintage automobiles – including half a dozen near-complete vehicles that were due for delivery only weeks from now. As we understand, the Receiver is directing those customers to tow away their vehicles unfinished, in at least one case demanding that the customer pick up the vehicle in its current state of completely unassembled parts. Substantial work was paid for in most cases, exposing Simpson to avoidable liability. Virtually all customers relied on Simpson's individual involvement and craftsmanship in entrusting him to fully restore one-of-a-kind vintage vehicles, some built from scratch.

      Several vehicles were repossessed by a creditor, NextGear Capital, during the night as collateral on a revolving line of credit that is personally guaranteed by Simpson. Approximately $3,000 was immediately due to be paid on the loan, and Simpson had a positive track record with the lender. No inventory has been provided nor photographs of the space. We are in the dark. Workers were left unpaid from approximately $25,000 assumed into receivership from a Citizens Bank account on or about April 24, 2025. Most appear to have walked off. The Department of Labor is investigating. Simpson is receiving exasperated calls and messages from customers, to whom he is unable to respond. My client is exposed to multiple third-party claims for breach of contract. He was defamed in New York City, his reputation was tarnished at his synagogue, and now the same pernicious harm is spreading to a business that was simply a passion project.[2]

      Rêver has nothing to do with Arch Real Estate Holdings, LLC (the "Arch Companies"), nor with 608941 NJ, Inc., but it has been taken hostage, plundered, and destroyed out of gamesmanship and apparent retaliation. Simpson has lost virtually everything. At the heart of this case, he is an outspoken fiduciary who is now cast as the sole whistleblower to the greater dissipation of the multimillion-dollar real estate portfolio once managed by the Arch Companies. The destruction of Rêver, liquidation of its assets to the detriment of its creditors and customers, and devaluation of all four properties under receivership generally, is a metaphor. It provides a window into the harm that Oak is causing to creditors and investors in the Arch Companies.

      If there is any threat to rule of law, it comes not from how my client expressed himself in the Courtroom. To be perfectly clear, addressing Your Honor in such a manner is anathema to undersigned counsel. I wish only to add that Simpson is a first-time litigant. He was left without counsel abruptly more than once, self-represented for a long time, and he is outnumbered and under attack with multiple litigation fronts and half-truths spoken in the very same Courtroom.

---

[2]    The word "rêver" is French. Its English translation means "to dream." A branding specialist suggested the name in honor of Simpson's father, from whom he learned to restore vintage cars beginning when he was 13 years old. His father passed away only nine years later. Since then, this business has been a dream of his. It was unique and special. Jeffrey Solomon Simpson's name became synonymous with the property itself, and it defined Rêver's inimitable reputation for quality and attention to detail. Harm to the business harms Simpson personally.

  As Simpson stated in his verified complaint to the adversary proceeding in relation to the underlying JJ Arch LLC bankruptcy action,[3] the actual and imminent threat to rule of law comes from the unfolding attempts by 35 Oak Holdings Ltd. ("Oak"), a foreign company acting through its American subsidiary, 608941 NJ, Inc., to conceal an ongoing transnational fraud – namely, Oak's deliberate efforts to avoid hundreds of millions of dollars in liability on loan guarantees which it assumed through the Arch Companies. The receivership is, we believe, predicated on a larger conspiracy that is designed to evade federal jurisdiction, conceal evidence, intimidate witnesses, and to misuse legal process through abusive motion practice and forum-shopping.

  These words are not chosen lightly. This case is extraordinary, not the least of which has been occasioned by Simpson's adversaries acting under the protective cover and false pretext of a "Joint Defense Agreement." They have fought tooth and nail to withhold it, despite its relation to the motives behind this litigation, and specifically with respect to Mr. Chassen's direction and control over litigation strategy concerning the receivership, among other things. It should be noted that, since intervening in this case, Oak has never answered Simpson's counterclaims. Plaintiffs respectfully request that the Court hear their arguments against producing the Joint Defense Agreement for Your Honor's <u>in camera</u> examination at the evidentiary hearing.

  Counsel for Receiver Huebscher & Co. and Mr. Chassen, respectively, were notified on Monday that Plaintiffs intended to seek a temporary restraining order and emergency hearing on a preliminary injunction. It has become apparent over the past two days, however, that so much damage has been done to the business that it is likely irreversible. We request an emergency evidentiary hearing because it is necessary to assess the magnitude of damage that has been done to the <u>status quo</u>, to prevent the further and continuing risk of permanent harm, and to hold the Temporary Receiver accountable for the faithful execution of this Court's Orders.

          Respectfully submitted,

          */s/ Benjamin Robert Rajotte*
          Benjamin Robert Rajotte, Esq.

cc: All Counsel of Record via NYSCEF

---

[3]  <u>JJ Arch LLC v. 608941 NJ Inc. et al.</u>, Case #1:24-ap-04025 (JPM), doc. #1, Verified Complaint, at ¶1.