**LaMONICA HERBST & MANISCALCO, LLP**                    **Hearing Date: December 18, 2025**
*Counsel to Gregory M. Messer, as Chapter 7 Trustee*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
Telephone: (516) 826-6500
Gary F. Herbst, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------x
In re:                                                              Chapter 7

YJ SIMCO LLC,                                              Case No.: 25-10437 (LGB)

                       Debtor.
----------------------------------------------------------x

## STATUS REPORT

Gregory M. Messer, solely in his capacity as Chapter 7 Trustee ("Trustee") of the estate of

YJ Simco LLC ("Debtor"), by his undersigned counsel, submits this Status Report in connection

with the status conference scheduled for December 18, 2025, and respectfully reports as follows:

**I.        Introduction**

1.        On March 9, 2025 ("Petition Date"), a voluntary petition pursuant to Chapter 11 of

title 11 of the United States Code ("Bankruptcy Code") was filed in this Court on the Debtor's

behalf. See ECF No. 1. The voluntary petition was signed by David Goldwasser ("Goldwasser")

as Chief Restructuring Officer. See id. The voluntary petition was filed by the Law Offices of

Charles Wertman P.C. ("Wertman"). See id.

2.        According to the Affidavit of Goldwasser that was filed with this Court on the

Petition Date ("Goldwasser Affidavit"): (a) the Chapter 11 was filed to halt a UCC foreclosure sale

scheduled for April 2, 2025; (b) the properties subject to the UCC foreclosure sale were located at

1055 Park Avenue, Unit 1, New York, New York 10028 (owned by non-debtor entity 1055 Park

Ave 1 LLC) and 1055 Park Avenue, Unit PH, New York, New York 10028 (owned by non-debtor

entity 1055 Park Ave PH LLC) (together, "Park Ave Properties"); (c) the Debtor was involved in two litigations involving Jeffrey Simpson ("Simpson") and Jared Chassen ("Chassen"); (d) the Debtor had two known creditors (American Express and Herrick Feinstein); and (e) the Debtor had no current employees. See generally ECF No. 2.

3. According to the New York State Department of Corporation website, the Debtor is a domestic limited liability company that was formed on or about May 4, 2021 ("Formation Date").

4. On April 14, 2025, the United States Trustee ("UST") filed a motion to convert the Debtor's case to Chapter 7 or, in the alternative, dismiss the Debtor's case. See ECF No. 7. The UST argued that the Debtor's case should be converted because, inter alia, the Debtor failed to: (a) file schedules within the statutory time period; (b) file an application to employ counsel; (c) provide proof of insurance; (d) provide proof its pre-petition bank account was closed and that a debtor-in-possession account was opened; (e) provide copies of bank statements; or (f) appear at the 341(a) meeting on April 9, 2025. See id.

5. On May 5, 2025, New York 555, LLC ("Park Ave Lender") filed motions for relief from the automatic stay with respect to the Park Ave Properties in this Court (together, "Stay Relief Motions"). See ECF Nos. 10, 11.

6. On May 14, 2025 ("Conversion Date"), this Court entered an Order converting the Debtor's Chapter 11 case to a Chapter 7 case. See ECF No. 18.

7. On May 15, 2025, the Trustee was appointed as interim Chapter 7 Trustee of the Debtor. See ECF No. 19.

8. At the status conferences held in this case on November 5, 2025 ("November 5 Hearing") and on December 8, 2025 ("December 8 Hearing"), the Court had certain questions and

issues that it wanted the Trustee and LH&M to address. This Status Report addresses the Trustee's work since his appointment and includes the Trustee's responses to the Court's queries at the November 5 Hearing and the December 8 Hearing.

## II.     General Administration And Compliance

### a.     Retention of Professionals

9.     Upon his appointment, the Trustee determined to employ general counsel to advise him in connection with the exercise of his statutory duties. By application dated May 29, 2025, the Trustee sought entry of an Order approving his employment of LaMonica Herbst & Maniscalco, LLP ("LH&M") as his general counsel in this case. See ECF No. 23. By Order entered on June 24, 2025, this Court approved the Trustee's employment of LH&M. See ECF No. 36.

10.     The Trustee also determined to employ accountants to advise him in connection with the exercise of his statutory duties. By application dated July 10, 2025, the Trustee sought entry of an Order approving his employment of Gary R. Lampert, CPA ("Lampert") as his accountants in this case. See ECF No. 38. By Order entered on August 6, 2025, this Court approved the Trustee's employment of Lampert. See ECF No. 50.

11.     The Trustee consulted with a proposed real estate broker, MYC & Associates, Inc. ("MYC"), with respect to the potential sale of the Park Ave Properties but the Debtor's interest in those properties was deemed abandoned by operation of law. See ECF No. 51.

### b.     Examination of the Debtor

12.     On June 6, 2025, the Trustee examined the Debtor by its managing member, Simpson, under oath at a 341(a) meeting of creditors ("341 Meeting").

13.     The Trustee and LH&M have spoken with Goldwasser and Wertman on several occasions throughout this case. However, following the Court's direction at the November 5

Hearing, Trustee's counsel again contacted Goldwasser and Wertman. Goldwasser provided a Declaration, which can be found at ECF No. 79, setting forth facts relating to the filing of the Debtor's voluntary petition and the Goldwasser Affidavit. In summary, Simpson and Yael Simpson provided the information to be included in the Debtor's voluntary petition and the Goldwasser Affidavit and, while after the Petition Date he and his employees were provided additional information from Simpson and/or Yael reflecting potential assts of the Debtor, they were unable to confirm that the Debtor in fact owned any such assets. <u>See</u> <u>generally</u> ECF No. 79.

      c.      <u>**Review of Proofs of Claim**</u>

14.      There are no funds in the Debtor's estate, and it is not known whether the Trustee will collect any funds. As such, the Trustee has not requested a deadline be set for the filing of proofs of claims against the Debtor's estate.

15.      The Debtor scheduled two general unsecured creditors – American Express and Herrick Feinstein – as disputed debts totaling $45,000.00. Neither of these scheduled disputed creditors have filed a proof of claim or entered an appearance in the case.

16.      As of the date of this Status Report, the following claims have been filed against the Debtor's estate: (a) claim 1-1 by the Internal Revenue Service ("<u>IRS</u>") in the amount of $2,500.00; (b) claim 2-1 by Arch Real Estate Holdings LLC ("<u>AREH</u>") in the amount of $400,000.00; and (c) claim 3-1 by Chassen in the amount of $137,750.00. The total amount of the claims filed is $540,250.00.

17.      There are no other known claims against the Debtor.

      d.      <u>**Tax Documents**</u>

18.      The IRS' proof of claim asserts a general unsecured claim in the amount of $2,500.00 (comprised of $500.00 per year for 2021 through 2025) and confirms that no returns

have been filed for the Debtor with the IRS since the Formation Date.

19.     On or about November 11, 2025, John Cannady, CPA, who was engaged by Simpson, provided copies of K-1s to LH&M, which were issued by various entities to Simpson individually, and partnership returns for 266 WMTR LLC. The K-1s and tax returns contain sensitive, personally identifiable information. Copies of those K-1s and tax returns are being provided to this Court for *in camera* review. None of the K-1s were issued to the Debtor and there is no evidence that the Debtor is a member or partner of any of the entities who issued the K-1s. Mr. Cannady indicated to LH&M that he had not received amended operating agreements or other documents to evidence transfers of interests from Simpson to the Debtor.

20.     On or about November 18, 2025, Goldwasser and Wertman provided copies of K-1s to LH&M, which were issued by various entities to Simpson individually. The K-1s contain sensitive, personally identifiable information. Copies of those K-1s are being provided to this Court for *in camera* review. None of the K-1s were issued to the Debtor and there is no evidence that the Debtor is a member or partner of any of the entities who issued the K-1s.

21.     The Trustee, through LH&M, also spoke with David Heyman, Esq. (former counsel to AREH). Heyman had no amended operating agreements or other documents to evidence transfers of interests from Simpson to the Debtor, nor any K-1s issued to the Debtor by any other entity.

22.     The Trustee and LH&M spoke with Simpson on multiple occasions, including shortly after the November 5 Hearing.[1] Simpson did not have or provide any K-1s issued by any

---

[1]     On a call following the November 5 Hearing with the Trustee his counsel and Simpson and his counsel it became extremely contentious, and neither the Trustee nor LH&M have had calls with Simpson since. As reflected in Simon's emails, which include emails to the Court, Simpson's emails have become increasingly contentious. See, e.g., **Exhibit A**. Notwithstanding, the Trustee and LH&M have been in communication with Benjamin R. Rajotte, Esq., counsel to Simpson, and will continue to communicate with Mr. Rajotte (or any other counsel that appears for Simpson).

entity to the Debtor. Simpson advised that his records were seized by other parties. Simpson advised that he has not filed any tax returns for himself and Yael Simpson, the Debtor or the LLCs referenced herein as the owners of the various real properties where Simpson and his family reside. He advised that he could not afford to pay an accountant to prepare all those returns.

23.     The Trustee was provided with a copy of Simpson's and Yael Simpson's 2021 income tax return. A copy of that tax return is being provided to this Court for *in camera* review. The tax return shows that, during the year 2021, a K-1 for 266 WMTR LLC was issued to both Simpson and Yael Simpson. According to Simpson, no other returns for Simpson and Yael Simpson after year 2021 were prepared or filed.

### III.    The Park Ave Properties

24.     As of the Conversion Date, the Stay Relief Motions were pending. The Trustee and LH&M, inter alia, reviewed the motions, analyzed the Debtor's interest in the Park Ave Properties, communicated with the Debtor through Simpson and his counsel, and communicated with counsel to the Park Ave Lender.

25.     As part of his due diligence, the Trustee requested access to inspect the Park Ave Properties. The Debtor, through Simpson, initially agreed to grant the Trustee and his professional's access on Monday, June 16, 2025. However, on the evening of Sunday, June 15, 2025, Simpson and his counsel advised, among other things, that Simpson would not be providing the Trustee and his professionals access to the Park Ave Properties.

26.     By motion dated June 20, 2025, the Trustee sought entry of an Order compelling Simpson, individually and as agent of the Debtor, to provide the Trustee and his professionals access to the Park Ave Properties. See ECF No. 27. The Trustee also sought entry of an Order scheduling a hearing on shortened notice of that motion. See ECF No. 28. By Order entered on

June 20, 2025, this Court scheduled a hearing on June 25, 2025. See ECF No. 29. On June 26, 2025, this Court entered an Order directing Simpson, individually and as authorized agent of the Debtor, to grant the Trustee and his professional's access to the Park Ave Properties. See ECF No. 37.

27. On July 14, 2025, LH&M inspected the Park Ave Properties with the Trustee and MYC.

28. The Trustee, in consultation with LH&M and MYC, determined that the Park Ave Properties likely did not have equity or sufficient equity to satisfy the known liens against the properties and the costs of sale such that funds would flow to the Debtor, i.e., the equity holder in the non-debtor entities that owned the Park Ave Properties.

29. At the direction of the Trustee, LH&M corresponded with counsel to the Park Ave Lender respecting the potential sale of the Park Ave Properties with a carve-out for the Debtor's estate. The Park Ave Lender was only willing to compensate the Trustee and his professionals from such sales and would not agree to any carveout to the estate. Further, the Park Ave Lender would also not agree to fix the amount of the debt due under the Note. With interest accruing at 24%, there was no equity remaining in the Park Ave Properties for the estate. As such, no agreement was reached and, on August 26, 2025, the Trustee filed a notice of proposed abandonment of the estate's interests in the Park Ave Properties. See ECF No. 51.

30. By Orders entered on August 28, 2025 and September 10, 2025, the Stay Relief Motions were granted, and the automatic stay was modified to permit Park Ave Lender to enforce its rights and remedies in and to the Park Ave Properties and the Debtor's membership interests in the respective non-debtor owners of the Park Ave Properties. See ECF Nos. 52, 55.

31. By operation of law, the Park Ave Properties were deemed abandoned as of

September 11, 2025. <u>See</u> ECF No. 51.

32.     The Trustee understands that no bankruptcy petitions were thereafter filed on behalf of the limited liability companies that own the Park Ave Properties. The UCC sales were to have been conducted on December 6, 2025. However, the Trustee, through LH&M, was advised that the UCC sales have been re-noticed for January 7, 2026.

**IV.     The Pre-Petition Litigation**

33.     The Goldwasser Affidavit identified two pre-petition litigations in which the Debtor was involved identified as 158055/2023 ("<u>2023 Action</u>") and 654928/2024 ("<u>2024 Action</u>").

**a.     The 2023 Action**

34.     At the Trustee's direction, LH&M reviewed certain of the pleadings filed in the 2023 Action,[2] which is pending in the Supreme Court of the State of New York, County of New York ("<u>State Court</u>").[3]

35.     The 2023 Action was commenced by Simpson in August 2023, individually and derivatively, as managing member of JJ Arch LLC ("<u>JJ Arch</u>"), suing derivatively as managing member of AREH and JJ Arch, against Chassen and First Republic Bank. <u>See</u> 2023 Action ECF No. 1. The complaint alleges, <u>inter alia</u>, "[a]t all times since the formation of [AREH], eighty percent (80%) of the membership interest in [AREH] has been held by Plaintiff JJ Arch" and that "[a]t all times since the formation of [AREH], the remaining twenty percent (20%) of the membership interest in [AREH] has been held by 608941 NJ Inc. . . . which is the investor member of Arch." <u>See</u> <u>id.</u> at ¶¶15, 16.

36.     In October 2023, Chassen filed a verified answer with counterclaims. <u>See</u> 2023

---

[2]     The Trustee notes that, as of December 15, 2025, there are 2,171 docket entries in the 2023 Action.

[3]     Hereinafter, references to the docket in the 2023 Action shall be referred to as "2023 Action ECF No."

Action ECF No. 212. Simpson responded to the counterclaims. See id. at ECF No. 293.

37.     In November 2023, 608941 NJ Inc. ("Oak") filed a complaint individually and derivatively on behalf of AREH, against Simpson, JJ Arch and AREH. See 2023 Action ECF No. 319. In January 2024, Simpson responded to the complaint and asserted a counterclaim against Oak. See id. at ECF No. 471.

38.     Also in November 2023, Chassen filed an amended verified answer with counterclaims against Simpson and the Debtor. See 2023 Action ECF No. 392. As to the Debtor, Chassen asserted breach of contract claims relating to an August 1, 2023 contract relating to 1640 Montauk LLC and 1640 Motors LLC, i.e., the agreement that Simpson provided to this Court ("August 2023 Contract"). See id. at ¶99. Chassen sought judgment of not less than $1,000,000.00, specific performance, and declaratory relief. See id. at ¶¶178-197.

39.     In February 2024, Simpson, through counsel, responded to the counterclaims. See id. at ECF No. 622. A copy of Simpson's reply is annexed as **Exhibit B**. As to the August 2023 Contract, Simpson generally denied the Chassen's allegations but admitted that: (a) "a contract was signed, and that Chassen breached the contract and sought to induce [Simpson] to commit bank fraud in connection with it"; and (b) "[Simpson] repudiated the contract and declared it terminated because [Simpson] declined to participate in Chassen [sic] attempted bank fraud." See id. at ¶¶179, 180; 185, 186; 192, 193. The Debtor did not appear through counsel in the 2023 Action and respond to the counterclaims.

40.     On or about April 1, 2024, JJ Arch removed the 2023 Action to the District Court, which referred the case to the Court (J. Mastando). See 2023 Action ECF No. 635; see also Adv. Pro. No.: 24-01335-jpm, ECF No. 1. By Order entered on October 28, 2024, the Court (J. Mastando) remanded the 2023 Action back to the State Court. See Adv. Pro. No.: 24-01335-jpm,

ECF No. 51.

41.     On the Petition Date (i.e., March 9, 2025), notice of the Debtor's bankruptcy filing was docketed in the 2023 Action by Wertman. See 2023 Action ECF No. 1353. On March 10, 2025, Chassen filed a notice of voluntary discontinuance as against the Debtor, without prejudice. See id. at ECF No. 1354. The Debtor, through Wertman, filed a letter objection to the voluntary discontinuance and argued that the voluntary discontinuance violated the automatic stay and was void. See id. at ECF No. 1357. Chassen responded to the letter. See id. at ECF No. 1358.

42.     On March 11, 2025, the State Court found that Chassen's response was supported by case law and that the Debtor's objection to the notice of voluntary discontinuance was without merit. A copy of the So Ordered letter is annexed as **Exhibit C**.

43.     On March 19, 2025, Simpson, pro se, filed a notice of removal to the United States District Court for the Southern District of New York ("District Court"). See 2023 Action ECF No. 1380.

44.     On June 9, 2025, the District Court issued a Memorandum Opinion and Order remanding the 2023 Action back to the State Court. See 2023 Action ECF No. 1556.

45.     The Debtor is no longer a party to the 2023 Action and, prior to the dismissal of the Debtor by Chassen, the Debtor had not asserted any affirmative claims for relief in the 2023 Action.

46.     Eric M. Huebscher is the court-appointed receiver in the 2023 Action, and Mr. Huebscher is represented by Martin G. Bunin, Esq. of Farrel Fritz P.C. Annexed as **Exhibit D** (without exhibits) is an email from Mr. Bunin to Gary F. Herbst, Esq. dated August 21, 2025, which responded to LH&M's inquiries regarding the Debtor's purported interests under the August 2023 Contract.

### b. **The 2024 Action**

47.     At the Trustee's direction, LH&M also reviewed the pleadings filed in the 2024 Action, which is pending in the State Court.[4]

48.     The 2024 Action was commenced by Chassen and 55 Manor LLC, individually and on behalf of JJ Arch Nostrand LLC, JJ Haverhill LLC, JJ Tuscaloosa LLC, JJ Pebble Creek LLC, JJ Centre Pointe LLC, JJ Colombia LLC, JJ Colombia LLC, JJ Midtown Oaks LLC, JJ Myrtle Point LLC, JJ 88 Arch LLC, JJ Cambridge LLC, JJ NCSC LLC, JJ Camelot LLC, and 5401 California Investors (collectively, "Portfolio Entities"), against Simpson and the Debtor. See 2024 Action ECF No. 1. The complaint seeks a permanent injunction enjoining any transfer by Simpson or the Debtor of the equity or property interests of the Portfolio Entities to JJ Arch. See id. at ¶1. According to the complaint, Simpson filed a proposed Chapter 11 plan for JJ Arch that stated Simpson was in the process of transferring "all the assets" of the Portfolio Entities to JJ Arch. See id. at ¶7.

49.     In November 2024, Chassen's motion for a preliminary injunction was deferred pending Simpson's retention of counsel. See 2024 Action ECF No. 54. In January 2025, the motion was further deferred. See id. at ECF No. 73.

50.     On January 28, 2025, counsel to Simpson and the Debtor filed a letter requesting an extension of time to respond to Chassen's motion, which was granted by the State Court. See 2024 Action ECF No. 79. Shortly thereafter, the same counsel filed a proposed Order to show cause to withdraw as attorney of record, which was entered by the State Court. See id. at ECF Nos. 80-83.

51.     On the Petition Date (i.e., March 9, 2025), notice of the Debtor's bankruptcy filing

---

[4]     Hereinafter, references to the docket in the 2024 Action shall be referred to as "2024 Action ECF No."

was docketed in the 2024 Action by Wertman. See 2024 Action ECF No. 85.

52. On March 17, 2025, a joint letter was filed on behalf of the parties to the 2024 Action respecting the extent of the automatic stay in the Debtor's case and whether the automatic stay in the Debtor's case extended to Simpson. See 2024 Action ECF No. 86. On March 19, 2025, the State Court So Ordered the joint letter as follows: "Subject to a contrary determination by the federal district court or bankruptcy court, the stay is limited to claims against [the Debtor]. All other matters may proceed." A copy of the So Ordered joint letter is annexed as **Exhibit E**.

53. On March 20, 2025, Simpson, pro se, filed a notice of removal to the District Court. See 2024 Action ECF No. 88.

54. On September 16, 2025, the District Court issued an Order Adopting Report and Recommendation of Magistrate Judge Henry J. Richardo ("Report"). See 2024 Action ECF No. 107. The Report recommended that the 2024 Action be remanded to the State Court but denied plaintiffs' (i.e., Chassen and 55 Manor LLC) request for attorneys' fees and costs. See id.

55. The Debtor remains a defendant in the 2024 Action but, by virtue of section 362 of the Bankruptcy Code and the automatic stay, the 2024 Action is stayed as against the Debtor. Prior to the Petition Date, the Debtor did not assert any affirmative claims for relief in the 2024 Action.

## V. The JJ Arch Bankruptcy Case

56. On March 7, 2024, as reflected above, JJ Arch filed a Chapter 11 petition in the Court. See generally Case No.: 24-10381-jpm.[5] Simpson signed the voluntary petition for JJ Arch as managing member. See id. at ECF No. 1. Simpson is listed as the 100% equity interest holder of JJ Arch. See id.

57. On its schedule A/B, JJ Arch listed an "Indirect LLC Interest" in various real

---

[5] Hereinafter, references to the docket in the JJ Arch bankruptcy case shall be referred to as "JJ Arch ECF No."

properties. See JJ Arch ECF No. 31. On its Statement Financial Affairs, JJ Arch listed eighty (80) "other businesses" in which JJ Arch has or had an interest. See id. at ECF No. 32 at question 26. JJ Arch left blank the dates those businesses existed. See id.

58.     Pursuant to an Order of the Court (J. Mastando), Davidoff Hutcher & Citron LLP is employed as counsel to JJ Arch in its pending Chapter 11 case. See JJ Arch ECF No. 163.

59.     On June 20, 2024, the UST examined JJ Arch, by Simpson, at a 341(a) meeting of creditors. See JJ Arch ECF No. 174-1. Simpson testified, inter alia, that JJ Arch "is the majority owner of [AREH]. [AREH] has a variety of companies that are directly owned, indirectly involved in." Id. at p. 7. When asked about the Debtor, Simpson testified: "It is an entity that's controlled by me and my wife. It has nothing to do with this." Id. at p. 54, lines 18:21. Simpson further testified "It has no involvement. It's not related. It's not related." Id. at p. 55, lines 8:17. When questioned whether JJ Arch assigned all its membership interests in certain entities to the Debtor, Simpson testified: "It assigned any distributions, if there was money to go to it, it could go upstream to an entity that would be controlled by YJ Simco, or I could have changed it." Id. at p. 86, lines 4:13.

60.     On September 3, 2024, JJ Arch filed a combined Disclosure Statement and Chapter 11 Plan of Liquidation ("JJ Arch DS & Plan"). See JJ Arch ECF No. 184. Simpson signed the JJ Arch DS & Plan as managing member of JJ Arch. See id. at p. 44. The JJ Arch DS & Plan states that JJ Arch "holds certain interests in other real properties through certain affiliated entities", which JJ Arch identified on Schedule A (i.e., the Portfolio Entities that are the subject of the 2024 Action) along with the related real properties ("Portfolio Projects"). See id. at p. 7. A copy of Schedule A is annexed as **Exhibit F**. JJ Arch proposed that its interests in, among other things, the Portfolio Entities and Portfolio Projects will be retained and liquidated to fund the plan. See id. at

p. 8. According to the JJ Arch DS & Plan, JJ Arch also owns 100% of the membership interests in JJ NY Shwenks, LLC, JJ NY 550 LLC, 225 HPR LLC, 146 E. 89 Borrower I LLC and 1640 Montauk LLC, and JJ Arch proposed to liquidate certain of the real properties owned by those companies. See id. at p. 19-20.

61.     On October 11, 2024, the Court (J. Mastando) entered the *Memorandum Opinion And Order On Jared Chassen And Arch Real Estate Holdings LLC's Joint Motion To Dismiss The Chapter 11 Case For The Debtor's Failure To Comply With Its Obligations* ("Dismissal Opinion") and granted Chassen and AREH's motion to dismiss JJ Arch's case. See JJ Arch ECF No. 215. JJ Arch appealed the Dismissal Opinion to the District Court. See id. at ECF No. 218. The appeal has been briefed and is pending before the District Court. See generally In re: JJ Arch LLC, No. 24-cv-08649-JAV (S.D.N.Y.) (filed 11/14/24).

62.     On October 14, 2025, JJ Arch filed a motion for relief from the Dismissal Opinion. See JJ Arch ECF No. 237. On December 2, 2025, the Court (J. Mastando) issued a *Memorandum Opinion and Order Denying JJ Arch LLC's Motion for an Indicative Ruling under Bankruptcy Rule 8008 Regarding Relief from Judgment under Rule 9024*. See id. at ECF No. 243. The Court (J. Mastando) denied the motion as untimely and on the merits. See id.

## VI.     Additional Potential Assets

63.     The Trustee and/or LH&M have conferred with all the interested parties, or their respective counsels, in this case, including, but not limited to, Simpson, Chassen, Weiner, Heyman, John Cannady, CPA, and Martin G. Bunin, Esq., counsel to receiver Eric M. Huebscher. The Trustee and/or LH&M have reviewed extensive emails from Simpson, documents turned over by Goldwasser, AREH and others, pleadings filed in the 2023 Action, pleadings filed in the 2024 Action, pleadings filed in the JJ Arch Chapter 11 case, and other publicly available information.

64.     Documents turned over by AREH include a Contribution Agreement dated as of October 31, 2021 from Simpson to the Debtor ("Simpson Contribution Agreement"). A copy of the Simpson Contribution Agreement is annexed as **Exhibit G**. The Simpson Contribution Agreement purports to provide for the assignment, transfer and contribution by Simpson to the Debtor of Simpson's ownership interests in: (a) 1055 Park Ave 1 LLC (100%); (b) 1055 Park Ave PH LLC (100%); (c) 1055 Park Ave ST LLC (50%); and (d) 266 WMTR LLC (50%). See id. at Schedule 1. No other companies are listed in the Simpson Contribution Agreement for assignment by Simpson to the Debtor. See generally id.

65.     Documents turned over by AREH also include a Contribution Agreement dated as of October 31, 2021 from Yael Simpson to the Debtor ("Yael Contribution Agreement" and, together with the Simpson Contribution Agreement, the "Contribution Agreements"). A copy of the Yael Contribution Agreement is annexed as **Exhibit H**. The Yael Contribution Agreement purports to provide for the assignment, transfer and contribution by Yael Simpson to the Debtor of Yael Simpson's ownership interests in: (a) 1055 Park Ave 4 LLC (100%); (b) 1055 Park Ave ST LLC (50%); and (c) 266 WMTR LLC (50%). See id. at Schedule 1. No other companies are listed in the Yael Contribution Agreement for assignment by Yael Simpson to the Debtor. See generally id.

66.     AREH also turned over a balance sheet for the Debtor dated as of March 31, 2022 and a profit and loss statement for the Debtor for January through March 2022, copies of which are annexed as **Exhibit I**. The profit and loss statement lists the Debtor and the companies reflected in the Contribution Agreements (i.e., 1055 Park Ave 1 LLC, 1055 Park Ave 4 LLC, 1055 Park Ave PH LLC, 1055 Park Ave ST LLC, and 266 WMTR LLC). See id. The balance sheet appears to reflect accounts for the benefit of the Debtor and the companies reflected in the Contribution

Agreements (i.e., 1055 Park Ave 1 LLC, 1055 Park Ave 4 LLC, 1055 Park Ave PH LLC, 1055 Park Ave ST LLC, and 266 WMTR LLC). See id. No other companies are listed in the balance sheet profit or loss statement. See generally id.

67.     As reflected in the Goldwasser Declaration, while Simpson and/or Yael Simpson provided certain additional information to Goldwasser and his employees reflecting additional potential assets of the Debtor, Goldwasser and his employees were unable to confirm that the Debtor in fact owned any such assets. See ECF No. 79 at ¶10. Further, according to Goldwasser, Simpson requested that Goldwasser file essentially the same schedules of assets that were filed in the JJ Arch case in this Debtor's case, but Goldwasser disagreed with that request. See id. at ¶11. Finally, prior to the Conversion Date, Goldwasser did not have sufficient information to file any additional or amended schedules under penalty of perjury on the Debtor's behalf. See id. at ¶¶12, 13.

68.     Neither the Trustee nor LH&M have received any operating agreements, amendments to operating agreements, share certificates or tax documents to confirm the transfer of the membership interest in 1055 Park Ave 4 LLC, 1055 Park Ave ST LLC or 266 WMTR LLC. By contrast, LH&M notes that share certificates transferring the 100% membership interests in 1055 Park Ave 1 LLC and 1055 Park Ave PH LLC, i.e., the companies that own the Park Ave Properties, were issued to the Debtor.

69.     Chassen and AREH each contend that, by virtue of the Contribution Agreements, and the representations in the balance sheet and profit and loss statements for the Debtor, the Debtor is the 100% owner of each of the limited liability companies identified in the Contribution Agreements (i.e., 1055 Park Ave 1 LLC, 1055 Park Ave 4 LLC, 1055 Park Ave PH LLC, 1055 Park Ave ST LLC, and 266 WMTR LLC).

70. Simpson has strenuously argued that the Contribution Agreements never became effective such that no transfers of the membership interests to the Debtor occurred and Simpson and Yael Simpson continue to own, <u>inter alia</u>, 1055 Park Ave 4 LLC, 1055 Park Ave ST LLC, and 266 WMTR LLC.

   a.    **<u>266 WMTR LLC</u>**

71. 266 WMTR LLC owns the real property known as and located at 266 Water Mill Town Road, Water Mill, New York 11976 ("<u>Water Mill Property</u>").

72. At the Trustee's direction, LH&M obtained and reviewed a title report for the Water Mill Property. 266 WMTR LLC took title to the Water Mill Property by deed dated August 14, 2017 and recorded on September 6, 2017. The Water Mill Property is encumbered by a consolidated mortgage lien of $1,800,000.00. The Water Mill Property is the subject of a residential foreclosure action commenced by Chase Bank pending in the Supreme Court of the State of New York, County of Suffolk pending under Index No. 623340/2024. 266 WMTR LLC failed to appear in the foreclosure action, and a judgment of foreclosure and sale was entered on September 29, 2025. <u>See</u> ECF No. 74 at <u>Exhibit C</u>. A foreclosure sale was noticed for December 15, 2025. <u>See</u> <u>id</u>. at <u>Exhibit D</u>.

73. In the JJ Arch DS & Plan, Simpson estimated that there was equity of "slightly less than $1 million dollars" in the Water Mill Property. <u>See</u> JJ Arch ECF No. 184 at §3.4. p. 20. Upon information and belief, the current fair market value of the Water Mill Property is not less than $3,000,000.00.

74. By letter dated December 4, 2025, LH&M requested that the plaintiff, JP Morgan Chase Bank ("<u>Chase Bank</u>"), in the foreclosure action consent to an adjournment of the sale. Chase Bank would not consent. As directed at the December 8 Hearing, the Trustee filed an order to show

cause to extend the automatic stay, for a limited period, without prejudice to seek a further extension of that time. <u>See</u> ECF No. 74. By Order entered on December 11, 2025, the Court granted the relief and extended the automatic stay as to 266 WMTR LLC and the Water Mill Property until January 26, 2026. <u>See</u> ECF No. 78.

     **b.**     <u>**1055 Park Ave ST LLC**</u>

75.     According to the NYC Department of Finance, Office of the City Register ("<u>OCR</u>"), 1055 Park Ave ST LLC took title to the real property located at 1055 Park Avenue, Unit Suite, New York, New York 10028 ("<u>Park Ave Suite</u>") by deed dated September 1, 2021 and recorded on September 16, 2021.

76.     Upon information and belief, the current fair market value of Park Ave Suite is not less than $200,000.00.

     **c.**     <u>**1055 Park Ave 4 LLC**</u>

77.     According to the OCR, 1055 Park Ave 4 LLC took title to the real property located at 1055 Park Avenue, Unit 4, New York, New York 10028 ("<u>Park Ave 4</u>") by deed dated August 31, 2021 and recorded on September 16, 2021.

78.     Upon information and belief, the current fair market value of Park Ave 4 is not less than $4,500,000.00.

79.     On January 1, 2025, a residential foreclosure action was commenced by Chase Bank against, among others, 1055 Park Ave 4 LLC in the State Court, which is pending under Index No. 850029/2025. According to the complaint, as of October 1, 2023, Chase Bank was owed a principal balance of $500,000.00 as of June 26, 2024, plus late charges and advances. On September 19, 2025, an answer was filed by Benjamin R. Rajotte, Esq. of Maiden Lane Law Group on behalf of 1055 Park Ave 4 LLC. This foreclosure action is pending as of the date of this Status

Report.

80.     On June 12, 2025, a commercial foreclosure action was commenced by Chase Bank against, among others, 1055 Park Ave 4 LLC, Simpson, and Yael Simpson in the State Court, which is pending under Index No. 850253/2025. According to the complaint, as of October 1, 2023, the plaintiff was owed a principal balance of $2,249,250.00. No answer has been filed yet. This foreclosure action is also pending as of the date of this Status Report.

## VII.    Follow-Up From November 5 Hearing

81.     At the November 5 Hearing, this Court, *inter alia*, suggested that the Trustee examine Goldwasser under oath with respect to the Debtor's petition and the Goldwasser Affidavit. The Trustee, through LH&M, communicated with Goldwasser and Goldwasser filed the Declaration filed at ECF No. 79. As reflected therein: (a) the Debtor's voluntary petition and the Goldwasser Affidavit were prepared based on documents and information supplied to Goldwasser's employees by Simpson and Yael Simpson; (b) after the Petition Date, Goldwasser and his employees were unable to confirm that the Debtor owned any additional potential assets; and (c) Goldwasser did not have sufficient information to file any additional or amended schedules under penalty of perjury on the Debtor's behalf. *See id.* at ¶¶8-13.

82.     At the November 5 Hearing, this Court requested that the Trustee seek to obtain copies of existing tax returns and tax documents. As set forth above, and as confirmed by the IRS's proof of claim, no tax returns have been filed by the Debtor since its Formation Date. Copies of K-1s issued by various companies related to Simpson are being provided to the Court for *in camera* review. No K-1s issued to the Debtor have been provided to the Trustee or LH&M by any party. The only tax return provided to the Trustee for Simpson and Yael Simpson is their 2021 tax return, which is also being provided to the Court for *in camera* review.

83.     At the November 5 Hearing, this Court opined that, if litigation was continuing involving the Debtor, then the Trustee may either need to file a suggestion of the automatic stay or seek relief from this Court for a violation of the automatic stay. As set forth above, one day after the Petition Date, the Debtor was voluntarily dismissed from the 2023 Action and the Debtor is no longer a party to the 2023 Action. See also **Exhibit C**. With respect to the 2024 Action, the parties to that action filed a joint letter acknowledging the applicability of the automatic stay as to the Debtor, and the State Court confirmed the same. See **Exhibit E**. The Trustee is not aware of any other pending litigation against the Debtor.

84.     Finally, at the November 5 Hearing, this Court asked for the Trustee's opinion about whether this Court should consider having the Debtor's case transferred to Judge Mastando. The Trustee does not take a position about whether the Debtor's case should be transferred and respectfully defers to the Court.

**VIII.   Conclusions and Recommendation**

85.     The Trustee could pursue the sale of membership interests in 1055 Park Ave 4 LLC, 1055 Park Ave ST LLC, and/or 266 WMTR LLC on an "as is", "where is" basis but, absent a consensual sale, it is certain that there will be protracted and highly contested litigation, along with its attendant delay, cost, and risk of an unfavorable outcome for the Debtor's estate. Assuming arguendo the Trustee prevailed, the administrative fees and expenses would likely exceed the amount of the filed claims (which total $540,000.00) and a distribution to creditors is unlikely. Equally important, assuming the claims of Chassen and AREH/Oak were disallowed, then such a sale would essentially be for the benefit of equity, i.e., Simpson and Yael Simpson who oppose the sale of the membership interests.

86.     There is substantial uncertainty as to whether the Trustee could sell the real

properties owned by 1055 Park Ave 4 LLC, 1055 Park Ave ST LLC, and 266 WMTR LLC. Assuming arguendo the Trustee had the legal authority to sell such real properties, there is additional uncertainty as to the potential tax consequences and the debt of the entities that would need to be paid before distribution to the Debtor as equity. However, absent a consensual sale, it is certain that there will be protracted and highly contested litigation, along with its attendant delay, cost, and risk of an unfavorable outcome for the Debtor's estate. To this end, the administrative fees and expenses would still likely exceed the amount of the filed claims (which total $540,000.00). Thus, while it is conceivable that, after consideration of all the foregoing there could be a surplus, such a sale would nevertheless be for the primary benefit of equity, i.e., Simpson and Yael Simpson who oppose the sale of the real properties.

87.     The Trustee could accept Simpson's invitation to litigate with Chassen and AREH/Oak. Underlying this position is Simpson's contention that the Debtor is the lynchpin of everything and that everything flows through the Debtor. However, there are several flaws with Simpon's supposition. First, Simpon's claims are not supported by the documentation and are contradicted by Simpson's prior testimony. Second, to pursue this path, this Court would effectively need to become a "super" appellate court to review and possibly reverse the prior decisions of the State Court, the District Court and the Court in the JJ Arch case. Third, pursuing these litigations would not be done for the benefit of the Debtor's creditors. Indeed, the target of these litigations would be the Debtor's primary creditors, Chassen and AREH/Oak, and could result in their respective claims being disallowed. In that event, the only parties to potentially benefit from these litigations would be the equity holders of the Debtor, i.e., Simpson, and Yael Simpson. Fourth, these claims are already being addressed in other courts (and have been for some time), and certainly can be pursued by Simpson and Yael Simpson in their own right. Alternatively,

the Trustee could abandon those claims such that Simpson and Yael Simpson could pursue those claims to the extent that they are not already doing so. In any event, Chassen, AREH/Oak and Simpson are each a party to the 2023 Action who have been pursuing their respective claims in the State Court since 2023. The State Court is well versed and has the necessary expertise to determine what is essentially a three-party dispute.

88.     The Debtor's scheduled assets were abandoned. The Debtor's primary creditors are Chassen and AREH/Oak, and any equity in the Debtor is owned by Simpson and Yael Simpson. Simpson, Chassen and AREH/Oak each differ on exactly what kind of assets or litigation they think could or should be liquidated and/or pursued by the Trustee. However, there is no doubt that the pursuit of any sale and/or litigation will be extremely expensive, time consuming, and aggressively contested. A good point of reference is the docket in the 2023 Action, which shows 2,170 entries. The administrative costs to pursue any of these paths would exceed the amount of the known claims against the Debtor.

89.     In the alternative, the Debtor's case could be dismissed now. In view of the record in this case, and the record in the 2023 Action, the 2024 Action and the JJ Arch Chapter 11 case, the Trustee concludes that this is the best and most viable option for the Court. This outcome was suggested by the Trustee at the November 5 Hearing, and the Trustee hereby reaffirms that dismissal is appropriate under the circumstances.

Dated: December 15, 2025
      Wantagh, New York        **LaMONICA HERBST & MANISCALCO, LLP**
                                      *Counsel to Gregory M. Messer, as Trustee*

                           By:      *s/ Gary F. Herbst*
                                    Gary F. Herbst, Esq.
                                    A Member of the Firm
                                    3305 Jerusalem Avenue, Suite 201
                                    Wantagh, New York 11793
                                    Telephone: (516) 826-6500