Jan 5, 2026

# Emergency Action Relief Request / Pleading (Docket 81), Supp #3

> Jeffrey Simpson, personally, Pro Se
> Managing Member of JJ Arch LLC, YJ Simco LLC, and personally
> 1055 Park Avenue
> New York, NY 10028

Delivered via email to all parties via ECF via Pro Se e file

| | |
|---|---|
| United States Bankruptcy Court Judge Honorable Beckerman | YJ Simco LLC (1:25-BK-10437) |
| United States Bankruptcy Trustee Grey M. Zipes | YJ Simco LLC (1:25-BK-10437) |

Southern District of New York
One Bowling Green
New York, NY, 10004

Re: **Request for Court Intervention – Respectfully Submitted**

Honorable Justice Beckerman of the Federal Southern District Bankruptcy Court:

As a follow up to the prior conference, notice to the parties has been submitted via ECF for the Pleading. I am working on retaining counsel to assist and this letter is subject to modification or addendums when counsel is ramped up.

I would like to correct the record and provide additional information on a variety of items discussed and questioned yesterday.

1. To clarify how Jeffrey Simpson and YJ Simco can both be represented in connection with JJ Arch, it is actually quite simple.  If you refer to the various JJ Arch Investment Entities, you will see in any example that there are interests of the Managing Member (Jeffrey Simpson, the only authorized party in a corp. capacity), which possesses the control over the actions of the entities and has management authority (consent rights included) with exception to limited major decisions by the other investment members.  Oak / Wiener / AREH / Chassen cannot fill this role, neither can YJ Simco or any person or LLC.  This is the very fraud that has occurred for over 2 years now.  They (opposition) even got close to getting Eric Huebscher (or any other Receiver in place) so that they can try to confirm the transactions that could not have occurred without me and only me.  Attorneys believed that it is possible a Receiver could have been installed here but we fought that and it died on its own.  The 654 action, that still names YJ Simco, was installed by the opposition for this exact reason.

   Secondly, if you look at the ownership shares of each entity, based on investments made by me, an exhibit is attached to each.  For the avoidance of doubt, they are also consolidated under Arch Property Holdings 1, LLC.  Those exhibits are the flow through on a property by property based on how my personal funds were invested and are entitled to distributions.  It is those direct

1

economic/investment interests, which was transferred in 2022 from me to YJ Simco. There is no way to transfer the MM control rights as it requires a human as we are at the top of the org chart of the corporate structure. This was explained to me by counsel, never objected to by any lender's counsel or 3rd party professionals, when relevant. It is also demonstrated in the legal opinions of enforceability, prepared for the lenders, on the closings of transactions.

The issue is that each time Oak tried to utilize Judge Joel Cohen's temp AREH (operating company only, does not own any property) Order of Nov 2023 to transfer AREH affiliated investment assets (always to seek contractual guarantee relief, that required my consent to safeguard all investors including YJ Simco, it was circumvented intentionally), providing Chassen a non MM consent right for JJ Arch (not contractual and dumbfounding as to how this could happen after the theft and fraud that he committed, and admitted to it) – there are two consents needed for Major Decisions, one is at the operating company AREH, which owns nothing, and two is at the individual "MM investment entity" property specific entity (each MM entity has a JJ entity). These were executed on the closing of every transaction by me as a Member (transferred to YJ after) and by me as the MM of those Investment Entity as the sole corp officer that was authorized to do so by the parties in each and all agreements without a removal right or any way to transact without me, even if I were deceased or incapacitated. A robust explanation exists on the JJ Arch LLC, Adv. Proceeding filed in Sept of 2024.

In a settlement proposal offered by Oak (simultaneous with the fraudulent insurance attack, mid 2024), Leslie Thorne (Haynes Boone), on behalf of Oak, asked for me to provide "non pro tunc" consent rights (retroactively) because she knows it was required but proceeded on hundreds of millions of dollars of transactions without it. She is no where to be found after she participated in this highly fraudulent activity. She also held the Joint Defense Agreement hostage for almost 2 years. Upon release, she becomes missing in action. It was another malicious attempt to steam roll me to allegedly settle but there was no resolution for me in their proposal (the insurance carrier agreed and denied their proposal as it lacked any releases for me).

Oak as 608941 NJ Inc. does not appear in front of you, they hide behind AREH, this way they can avoid disclosures, discovery, and testimony. If you refer to the JJ Arch bankruptcy early transcripts, Your Honor will see how much time was spent for Kevin Wiener to avoid providing testimony, so their litigation strategy quickly changed to hide behind AREH through Olshan Fromme. Why were my "non pro tunc" consent rights being sought if they are not required? Why did they work so hard for a receiver? Those are required by Jeffrey Simpson, not YJ Simco. However, YJ Simco interests were eroded as a result.

These are the fraudulent conveyances that I have testified that have occurred at every level, which is factual from my dialogue with David Heymann (AREH AND JJ ARCH former corp counsel) and prior staff members. Mr. Heymann suggested that if the parties and or the Court, do not understand the consent requirements, they should look at the closing Opinions by counsel for each (or any) and all transaction file(s). He provided the Corp. Governance Opinions each time.

It is "cute" how Oak tries to merge both consent rights into one each time that they sought consent and demanded it in minutes (already pre baked with Chassen as a proxy, lines up with the 7.19.23 blueprint), to give assets away so that they could get the self help / ultimate relief that wanted – give the keys back to every asset to avoid guarantee exposure. This is a big "no no" in

all investor agreements. It says in the affirmative and negative controls that the acting managing member cannot make decisions that financially benefit them without consent of the investors (YJ Simco included), except for very specific pre agreed upon fees that are carved out. I crafted this structure on purpose to protect the parties from situations like this. I raised my hand on every transaction of foul play, I was harassed, stepped on, and disrespected without a proper legal answer. That is why Jonathan Koevary refuses to have a dialogue with me, David Heymann, the Trustee, etc. If Your Honor will consider Ordering this dialogue, it may fast track what will be the main event of the Motion that I presented, fraudulent conveyances (with emphasis).

2. During the last weeks of JJ Arch's initial Chapter filing (it was approaching 6 months), I helped develop an Adv. Proceeding with counsel of record at the time, DHC. Their attorney, Craig Price and I did a deep dive into this issue (with only the information we had, prior to the May 2025 transmission of certain corp docs). This document will help illustrate the ownership structure and consent rights issue I mention above.

3. If Your Honor looks at the early term sheet with Oak, which follows through into a JV Agreement for AREH, it refers to "J1" and "J2", this is indicative of the dual positions that exist, in two capacities. One of which I transferred to YJ. I am not an attorney but I am trying my best to explain here the relationship.

4. I will attach the transfer exhibit that is amongst myself and all the parties that illustrates JJ Arch's ownership to YJ Simco. Again, I did not have this information until May of 2025 (starting around Dec. 2023, whereby NYS Court allowed them to invade all my files, personal and confidential included). I can evidence the Dropbox, corp cloud infrastructure if the Court desires. Oak admits and invades all confidentiality of my information (as the only control person of a large enterprise). As Mr. Koevary says, they used their right to pick and choose these files to further attack me.

5. The Stay issue is comical – Why did the opposition name YJ Simco to the hotly contested main NYS case if it wasn't relevant? Clearly they had concern of it's ownership shares. Again, if you look at the 2nd NYS action, it also names YJ, for the same reason. It acknowledges it's ownership shares and that is why it sought a TRO during the JJ Arch bankruptcy, which was an absolute breach of the JJ Arch Bankruptcy stay.

6. With regards to 1055 Park Ave, I will include here proof that the IRS was notified about ownership shares in 2021/2022 for clarity, per the request of Luxury Mortgage (the initial lender on unit 1 and PH). This illustrates that Yael Simpson is the 100% owner of unit 4 via the LLC, Jeffrey Simpson is the guarantor. No YJ Simco, it simply didn't find its way here because of the lender requirements. The loan documents also mimic her sole ownership and my guaranty. This information was shared with the Trustee 6 months ago but they refuse to bring the relevant facts to this Court.

7. With regards to the August 1, 2023 contract, Chassen sought to seek performance to "grab" the 225 HPR house, he was unsuccessful. This was after he siphoned approx. $40,000 in cash in rent and held the house hostage. The Feb 2024 NYS Court Order reminds us that I was in sole control. Chassen believes that he had the rights to do what he did, contrary to the Court Order. He then extorts me for the vehicles found in the exhibit of the Agreement. He was partially

successful in these efforts, but I did not conclude because of disputes. He then used Eric Huebscher to complete his self help, it failed. These vehicles were found at a friend of Chassen in upstate NY, who is a convicted felon. It appears that he was even disassembling them to sell them like a "chop" shop. Even the DMV, various police entities have seen the Aug 1st agreement and wonder how this is happening (knowing that there is no final determination in litigation). According to NYS DMV, I am told that Chassen confirms that he had the rights to these vehicles per the Aug 1st, 2023 Agreement. As Your Honor points out, you cannot have it both ways. This Agreement provides clarity of the intentions and when coupled with Chassen's JJ Arch Member Loan (that was failed, I will provide a copy here) and his contractual and automatic surrender of all Membership interests, any obligation I would have under this Agreement is fulfilled because he was "wiped" of his interests for his pledge pursuant to 4.2 (D) of JJ Arch. His acknowledgement of working for Oak breaches his ability to say that he was not "Resigned" and forfeited his shares of all JJ Arch and Investment Entities. He told the Bankruptcy Court he clearly understood the definition of his Resignation in his Affidavit, number 43 on the JJ Arch docket. And of course the JDA merges him and his purported JJ shares, and Oak into one, fully prohibited in any way. How would he seek a Receiver, without grounds to do so? There was clear intention that YJ Simco is a party to assets that were sold off by Mr. Huebscher (with Chassen's participation) and this continues until this Court considers putting a "hold" on it to clarify the position it takes. Gary Herbst refuses to take any action.

I hope this provides initial clarity while the conversation is fresh. As the lawyers suggest, I will reserve my rights and ask the Court to realize that I have prepared this interpretation without counsel and once I have counsel in place, there may be adjustments. This is not a litigation strategy, this is to report information to the best of my knowledge and ability.

Finally, if Mr. Messer and Herbst are still engaged, I do not believe that they have the right to cease communication with me. Mr. Herbst misrepresented during the conference, at least twice. I had many conversations with him. When I was frustrated, I reached out to Mr. Messer myself in hopes that we could find a path forward, without obstacles. He called me back with Mr. Herbst and required Mr. Rajotte to join me. The intentions of this dialogue were already derailed and defensive by this action. Mr. Herbst may be talented, but he is not "listening" and has not since the beginning. I have offered countless times to sit with him, with all of the documents, with my computer to work through anything, he has refused. I suggested that he speak to people in the know, he contacted several of the parties but ignored some of the most relevant. I also do not believe his commentary about his conversation with Mr. Ostrow is correct but not sure it is worth going back and forth because I do not believe this Court is interested in a "he said, she said". I will need to authorize Mr. Azriliant (my personal accountant) to speak with Mr. Herbst and I will only do so in a manner where this is kept collegiate, respectful, and with open dialogue – not this back door maneuvering that I have seen. I am a big fan of full disclosure, we can all disagree, but at least parties know each other's positions. Although I have asked to have Mr. Herbst removed, I do acknowledge that he has put effort forward here and I would like to help clarify many of these points without utilizing the Court's time so hopefully he will give me a chance and I will do the same. The Court's blessing is sought and appreciated but not required (I do not think it is).

Frankly, if we can get through the details of what I suggested above, maybe a resolution may be formed to end this litigation forever more (those are my desires). I do believe Mr. Herbst attempted to do this at 1055 Park, and his efforts were in good faith and very reasonable. It did not work out but he clearly has

the experience to try to resolve or come up with a plan to end certain disputes when they are in the Bankruptcy court.

Thank you for your consideration and understanding.


Respectfully submitted,

/s/ Jeffrey Simpson